Smith Estate.

Argued May 6, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*James C. Larrimer,* with him *Dougherty, Larrimer, Lee & Hickton,* for appellant.

*Harold R. Schmidt,* with him *Evans Rose, Jr., Henry McC. Ingram,* and *Rose, Schmidt and Dixon,* for appellees.

*George R. Craig,* with him *George Wilson McKeag* and *William McC. Houston,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, June 27, 1969:
Samuel H. Smith, the brother of decedent (Laura Floyd Smith) died in 1962, leaving one-half of his estate to decedent and the other half in trust, the Union National Bank of Pittsburgh to act as trustee. The trust gave income to decedent for life, then income to Verner S. Purnell, the nephew of decedent and Samuel, for life, with the principal in equal shares to four named charities at the death of the survivor.

Decedent subsequently had her attorney draw a will for her following the same basic distributive pattern as did the will of her brother. On July 13, 1962,

decedent executed the will, leaving her tangible personal property to her nephew, Verner S. Purnell, $500.00 to one Andrew J. McCune, and the residuary one-half to Verner outright and one-half to the same four charities named in her brother's will.

On July 11, 1964, decedent entered into an agency agreement with the Union Bank, the bank to hold assets which she delivered to it, keep records, submit statements, remit income and principal to her at her request, review her investments and make recommendations, and submit income tax information to her. The agency agreement was terminable by either party upon thirty days written notice.

On November 1, 1965, decedent executed a new will and a revocable trust agreement, Union Bank to act as trustee. The new will gave personal effects to the nephew, $500.00 to Andrew J. McCune, and poured over the residue into the new trust. The trust gave decedent as much income or principal as she desired during her life, and at her death distributed the trust estate according to the same scheme utilized in the 1962 will—one-half to the nephew and one-half to the four named charities. The new will further provided that "In the event that the trust agreement is not in effect at my death . . . I nevertheless give and devise my residuary estate to the Trustee, to be held under and subject to the terms and conditions of a trust exactly the same as those set forth in the Trust Agreement of November 1, 1965 as it exists at the execution of this, my Will, and for this purpose it is incorporated here by reference as though set forth in its entirety."

Decedent died on November 17, 1965. Her attorney had previously mailed her the signed ribbon copy of her 1962 will and had suggested that it be destroyed. It was not found after her death, but a conformed copy of her 1962 will, concededly made at the same time, by the same typewriter, and with the same strokes

as the signed ribbon copy, was admitted into evidence, along with testimony of the due execution and attestation of the ribbon copy.

The issue before us is whether the charitable gifts are invalid because decedent's final will and trust were executed within thirty days of her death. If the charitable gifts pass under the will, they can be saved under the Act of April 24, 1947, P. L. 89, §7, 20 P.S. §180.7.[1] See, e.g., *Baum Estate,* 418 Pa. 404, 211 A. 2d 521 (1965). But since the parallel statute applicable to trusts, Act of May 16, 1939, P. L. 141, §1, 10 P.S. §17[2] contains no such saving provision, if the charitable

---

[1] "Wills shall be modified upon the occurrence of any of the following circumstances, among others: (1) Death within thirty days.—Religious and charitable gifts. Any bequest or devise for religious or charitable purposes included in a will or codicil executed within thirty days of the death of the testator shall be invalid unless all who would benefit by its invalidity agree that it shall be valid. The thirty-day period shall be so computed as to include the day on which the will or codicil is written and to exclude the day of death. Unless the testator directs otherwise, if such a will or codicil shall revoke or supersede a prior will or codicil executed at least thirty days before the testator's death, and not theretofore revoked or superseded and the original of which can be produced in legible condition, and if each instrument shall contain an identical gift for substantially the same religious or charitable purpose, the gift in the later will or codicil shall be valid; or if each instrument shall give for substantially the same religious or charitable purpose a cash legacy or a share of the residuary estate or a share of the same asset, payable immediately or subject to identical prior estates and conditions, the later gift shall be valid to the extent to which it shall not exceed the prior gift."

[2] "Any gift for religious or charitable uses hereafter made to take effect in possession or enjoyment at or after the death of the donor shall be void unless made at least thirty days before such death, and any promise hereafter made to give real or personal property for religious or charitable uses shall be unenforceable unless made at least thirty days before the death of the promisor. The thirty day periods provided for in this act shall be so computed as to exclude the first and include the last day thereof."

gifts pass under the trust, that portion of the trust is unenforceable. The court below held that the trust was invalid because although the Union Bank held the trust assets under the Agency Agreement of 1964, formal delivery of the assets to the bank *as trustee* was never made. Cf. *Schlaich's Will,* 142 N.Y.S. 2d 823 (Surr. Queens Cty. 1955), aff'd per curiam, 148 N.Y.S. 2d 454 (App. Div. 1955). The court below then held that the charitable gifts passed under the will, into which the trust provisions were incorporated by reference, and were valid under the saving provision of 20 P.S. §180.7. The court en banc dismissed exceptions and appellant Verner S. Purnell has taken this appeal.

We need not decide whether the court below properly held the entire trust to be invalid on the grounds that the trust res was not properly delivered to the trustee, because even if the trust as a whole was validly *constituted,* making the charitable gifts in it subject to 10 P.S. §17, we hold that the *charitable gifts* nonetheless passed to the charities by the will and were saved under 20 P.S. §180.7. Assuming the delivery of the trust assets to be sufficient, it is clear that 10 P.S. §17 would bar the distribution of the charitable gifts under the trust. At that point, however, those assets would not pass by intestacy or to the other trust beneficiary, but a resulting trust would be created, as to the charitable gift assets the trustee holding those assets for the benefit of decedent-donor's estate. "Where the owner of property gratuitously transfers it upon trust for a charitable purpose and the purpose cannot be accomplished, the transferee holds the trust estate upon a resulting trust for the transferor or his estate, unless (a) the doctrine of cy pres is applicable, or (b) the transferor properly manifested an intention that no resulting trust should arise." Restatement 2d, Trusts, §413 (1959); see Scott, Trusts §413 (3d ed. 1967).

Since neither of the excepting provisions apply, a resulting trust is created[3] as to that part of the trust that is invalid, see Restatement 2d, Trusts, §411, comment h. The charitable gifts in question then are held in trust for the estate of decedent and pass under her will. The will of course provides that if the trust is ineffective,[4] its dispositive scheme is incorporated into the will, so that the identical charitable gifts are passed by the will.

The only question remaining then is whether the charitable gifts under the will are within the saving provision of 20 P.S. §180.7. Clearly there was a prior will passing identical charitable gifts as 20 P.S. §180.7 requires. Appellant argues only that the carbon copy of the will was inadequate, since the statute requires the production of the "original" prior will. We faced and rejected appellant's argument in *Baum Estate,* supra, and we see no reason to retreat from our decision in that case.

The decree of the Orphans' Court of Allegheny County is affirmed. Each party to pay own costs.

---

[3] The general rule of Restatement 2d, Trusts, §§411, 422 that bars resulting trusts where the express trust is invalidated by illegality does not apply to this case. It is clear that the illegality envisioned by that rule involves only situations where the settlor is "blameworthy", not merely where "it would be against public policy to enforce the trust." §422, comment g; see §422, comment h (trust made illegal by change of circumstances creates resulting trust).

[4] Although the incorporation-by-reference provision speaks only to the ineffectiveness of "the Trust Agreement" and not to the invalidity of only *part* of the trust, it is clear that the decedent's intent was to incorporate into the will any provision of the trust's dispositive scheme that could not be enforced as part of the trust.

It could be argued that once the thirty day rule invalidated the charitable gifts under the trust, the gifts were automatically incorporated by reference into the will. However since the trustee held the assets in question, at least as a technical matter, a resulting trust would still be created.